```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
STARR INDEMNITY & LIABILITY COMPANY,   :
                                       :    13 Civ. 742 (DLC)
                      Plaintiff,       :
          -v-                          :
                                       :    OPINION AND ORDER
AMERICAN CLAIMS MANAGEMENT, INC.,      :
                                       :
                      Defendant.       :
                                       :
-------------------------------------- X
```

APPEARANCES

For the Plaintiff:

Justin Klein, Thomas Cahill
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169-0079

For the Defendant:

Thomas J. McCormack, Seth Kruglak
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

DENISE COTE, District Judge:

Plaintiff Starr Indemnity & Liability Company ("Starr") invokes the work-product doctrine and the attorney-client privilege to support its claw-back of documents produced in this litigation. For the reasons set forth below, Starr's application is denied with a limited exception.

1

BACKGROUND

This action, filed on February 1, 2013, concerns allegations that American Claims Management Inc. ("ACM") improperly handled 77 insurance claims on behalf of Starr pursuant to a claims services agreement. Fact discovery is currently scheduled to close on April 22, 2014.

During the March 27, 2014 deposition of Michael Haliskoe ("Haliskoe"), a claims manager at Starr, Starr objected to ACM's use of a July 2012 e-mail chain ("E-mail") between Haliskoe and another Starr claims manager, Deborah Clark ("Clark"), which made reference to a letter prepared by Starr's local counsel in Michigan ("Letter"). Following a teleconference with the Court, the deposition proceeded without questions about the E-mail, and the parties made written submissions regarding Starr's claim that the E-mail and Letter were protected by both the attorney-client privilege and the work-product doctrine.

The Letter, which was also produced to ACM in discovery, is four pages long, dated July 23, 2012, and written to Clark. The Letter begins by describing the attorney's assignment, which was to review a number of no-fault "PIP"[1] claims summaries. These

---

1 "PIP" refers to "Personal Injury Protection" and is generally an extension of automobile insurance that covers some medical expenses and lost wages resulting from injuries sustained in an automobile accident.

were large loss claims for catastrophic injuries.  The Letter can be broadly characterized as giving business advice.  The Letter's author draws on his familiarity with fraudulent claims and identifies red flags for Starr to be aware of when conducting an audit of ACM's work for Starr.

Two paragraphs of the Letter contain references to a Michigan statute and practices of judges in applying its terms.  But, these paragraphs are not the focus of the Letter.  Significantly, the E-mail makes reference to only the business-related conclusions of the Letter, not the limited discussion of the statute.


DISCUSSION

Starr relies principally on the work-product doctrine in seeking to redact the portions of the E-mail that make reference to the conclusions of the Letter.  It also relies on the attorney-client privilege.  Each issue is addressed in turn.

Work-Product Doctrine

The work-product doctrine grants qualified protection to "materials prepared by or at the behest of counsel in anticipation of litigation or for trial."  In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007)

(citation omitted); see Fed. R. Civ. P. 26(b)(3)(A). A document is prepared "in anticipation of litigation" if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (citation omitted). The work-product doctrine does not protect documents "prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Id. at 1202. The party invoking the doctrine bears "the heavy burden" of establishing its applicability. Grand Jury Subpoena, 510 F.3d at 183.

Starr has failed to carry its burden of proving that the E-mail or the Letter is protected by the work-product doctrine. The Letter does not state or imply that it was prepared because of the prospect of anticipated litigation between Starr and ACM, and Starr has not presented any affidavit to support a different assessment of its context. Rather, as the author explains, he was merely asked to review claims summaries. Accordingly, neither the E-mail nor the Letter is protected by the work-product doctrine.

Starr makes essentially two arguments in response, neither of which is persuasive. First, Starr attempts to connect the

4

Letter to this litigation. It points to the fact that it conducted five audits in July and August of 2012, that the Letter was written during this time period, and that this litigation grew out of the audits. But, Starr regularly conducts audits as part of its business. The existence of an audit does not indicate that the Letter was written because of the prospect of litigation. Any other conclusion would sweep all correspondence with counsel during audits into the work-product doctrine.

Second, Starr cites Grinnell Corp. v. ITT Corp., 22 F.R.D. 74, 77 (S.D.N.Y. 2003). Nothing in this Opinion, however, is in tension with Grinnell. Starr has failed to meet its burden to show that the Letter was not prepared in the ordinary course of its business.

Attorney-Client Privilege

The standard for invocation of the attorney-client privilege is well established. It protects communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Justice at NYU School of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (citation omitted).

5

The mere fact that attorneys are involved in a communication does not cloak it with privilege. To qualify for the privilege, a communication must be "generated for the purpose of obtaining or providing legal advice as opposed to business advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007) (emphasis added). In determining the purpose of a communication, courts consider "whether the predominant purpose . . . is to render or solicit legal advice." Id. at 420. "[L]egal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." Id. at 419. As above, the party invoking the privilege bears "the heavy burden" of establishing its applicability. Grand Jury Subpoena, 510 F.3d at 183.

Starr has failed to carry its burden of proving that the Letter and E-mail are protected by the attorney-client privilege. The Letter largely offers assessments of the claims. But, as explained above, these are business assessments, not legal advice. Similarly, the E-mail refers only to the business conclusions in the Letter. Thus, neither document is protected by the attorney-client privilege, with the following exception: Starr may redact from the Letter the two paragraphs on page 3 discussing the Michigan statute. To the extent that Starr seeks to protect any other document from discovery, it shall follow
6

the guidance set forth in this Opinion.

CONCLUSION

Starr's invocation of the attorney-client privilege and the work-product doctrine is rejected with the two exceptions noted herein.

SO ORDERED:

Dated:   New York, New York
         April 8, 2014

                                    _____
                                          DENISE COTE
                                    United States District Judge